UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RUSSELL R. LOVELESS and      :      CIVIL NO: 3:13-CV-01546
MARY ELLEN HENNINGS,         :
                             :       (Judge Caputo)
            Plaintiff        :
                             :      (Magistrate Judge Schwab)
            v.               :
                             :
BANK OF AMERICA, N.A., *et al.,*      :
                             :
            Defendants       :
                             :

## REPORT AND RECOMMENDATION

### I.  Introduction.

The plaintiffs, Russell R. Loveless and Mary Ellen Hennings, claim that the defendants failed to timely pay taxes from a mortgage-escrow account in violation of the terms of the mortgage.  They also claim that the defendants violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, in a number of instances.  The defendants have filed a motion to dismiss the amended complaint.  For the reasons set forth below, I recommend that the defendants' motion to dismiss the amended complaint be granted in part and denied in part.

### II.  Background and Procedural History.

The plaintiffs began this action by filing a complaint in June of 2013.  At that time they were represented by counsel, Anthony J. Moses, Esquire.  The

defendants filed a motion to dismiss the complaint, and the plaintiffs sought an extension of time to respond to that motion asserting that they could not reach Moses, that Moses closed his office, and that his phone numbers had been disconnected.  The Court granted the plaintiffs an extension of time to respond to the motion, and it ordered that they obtain new counsel or proceed *pro se*.  The plaintiffs subsequently filed an amended complaint *pro se*.

The amended complaint names five defendants: (1) Bank of America, N.A. (BOA); (2) BAC Home Loans Servicing, LP (BAC); (3) MERS Corp., Inc. (MERS Corp.); (4) Mortgage Electronic Registration Systems, Inc. (MERS Inc.); and (5) the Federal National Mortgage Association (Fannie Mae).  The plaintiffs allege the following facts about the defendants.  BOA is a national bank.  BAC was a subsidiary of BOA until July of 2011, when BAC merged into BOA.  MERS Corp. is owned by many of the most significant stakeholders in the mortgage industry, and it owns and operates an electronic registry system (MERS system) that purports to track the ownership and servicing rights of its members in residential loans.  MERS Inc. is a wholly owned subsidiary of MERS Corp.  MERS Inc. serves as the nominal mortgagee in the public land records for loans that are registered on the MERS system.  Since 2001, MERS Inc. has served as the mortgagee of record for more than 1.5 million mortgages.  Fannie Mae is a publically traded company that securitizes mortgages.

2

The plaintiffs' claims stem from a mortgage, and they allege the following facts with respect to that mortgage and their involvement with the defendants.  In May of 2007, the plaintiffs entered into a mortgage with Countrywide FSB, a federally chartered savings bank.  The mortgage, which the plaintiffs attached to their amended complaint as an exhibit, lists the plaintiffs as the borrower/mortgagor, Countrywide Bank, FSB as the lender, and MERS Inc. as the mortgagee. *Doc. 15-1* at 3.  The mortgage provides that MERS Inc. is acting solely as a nominee for the Lender and the Lender's successors and assigns. *Id.*  The mortgage provides for an escrow for property taxes, and it provides among other things that the "Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA." *Doc. 15-1* at 11.

In August of 2007, the Pocono Mountain School District issued a tax bill in the amount of $1,468.22 for taxes on the property subject to the mortgage.  Countrywide FSB failed to pay those taxes from the escrow as it was required by the mortgage.  The plaintiffs received a notice from the Coolbaugh Township tax collector that the taxes were unpaid, and the plaintiffs notified Countrywide that the taxes were due and payable.  Still Countrywide failed to pay the taxes.  In January of 2008, the Coolbaugh Township tax collector transferred the tax bill to the Monroe County Tax Claim Bureau.  The Monroe County Tax Claim Bureau charged additional fees and interest bringing the new total due to $1,666.01, for

3

which the plaintiffs became liable.  The plaintiffs claim that Countrywide FSB breached the mortgage by failing to pay the taxes when due.  The plaintiffs allege that they exercised their right to rescind the contract.[1]

In 2008, Bank of America Corporation, the parent of BOA, purchased Countrywide Financial Corporation.  On July 1, 2008, BAC acquired Countrywide FSB.  Prior to April of 2009, BAC did business under the name "Countrywide Home Loan Services, LP."  According to the plaintiffs, Countywide FSB breached the mortgage by failing to pay the taxes before BOA acquired Countrywide.

On April 28, 2009, MERS, Inc., as nominee for Countrywide FSB, assigned and transferred the mortgage to Countrywide Home Loans Servicing LP.  That assignment was executed by Serena Harmon and David Perez, identified on the assignment as assistant vice presidents of MERS, Inc.  The plaintiffs allege, however, that Perez was not a duly authorized officer of MERS, Inc.[2]

On May 18, 2009, BAC, formerly known as Countrywide Home Loan Servicing LP, filed a mortgage foreclosure action in the Court of Common Pleas of Monroe County, Pennsylvania against the plaintiffs.  The complaint in that case, which the plaintiffs attached to their amended complaint as an exhibit, alleged that

---

[1] When referring to the contract, I presume that the plaintiffs are referring to the mortgage. The plaintiffs do not allege when they purportedly rescinded the mortgage.  Nor do they provide any other allegations about the purported rescission.

[2] The plaintiffs do not allege what, if any, significance this has either on the validity of the assignment or on their claims in this case.

the mortgage was in default because monthly payments of principal and interest were due and unpaid for December 1, 2008 and each month thereafter. *Doc. 15-4* at 4. The verification attached to the foreclosure complaint was signed by David Perez, as assistant vice president of BAC. In November of 2009, the Court of Common Pleas entered a default judgment against the plaintiffs in the amount of $134,204.54, and a few days later, BAC filed a praecipe for a writ of execution. Execution proceedings were stayed, however, in January of 2011.

In January of 2011, the plaintiffs discovered, through Fannie Mae's website, that Fannie Mae claimed to own their mortgage. Also, customer service representative of Fannie Mae informed Loveless that Fannie Mae has owned the mortgage since its origination. In late January of 2011, the plaintiff sent a request to BAC asking for the full name, address, and phone number of the current holder of their loan, but BAC did not respond. At a reconciliation meeting ordered by the state court, an attorney representing BOA stated that Bank of America owns the loan.[3] BOA, MERS, Inc., and Fannie Mae have failed to produce any evidence of ownership of the mortgage and note.

---

[3] Although the plaintiffs sued both BOA and BAC, they state in one of the opening paragraphs of their amended complaint that BOA and BAC are referred to collectively in the amended complaint as "Bank of America." Although the plaintiffs undoubtedly thought doing so would make things easier, in fact, it makes the allegations unclear and it makes it difficult to determine which allegations concern BOA, BAC, or both.

In July of 2011, the Court of Common Pleas of Monroe County ordered the default judgment stricken, the writ of execution stricken, and a scheduled sheriff's sale canceled.  A short time later, BAC filed a praecipe to discontinue the foreclosure action.

Loveless contends that he was misled as to which entity owned his mortgage and note.[4]  According to the plaintiffs, although Bank of America no longer owns the mortgage and the note, they are still attempting to initiate a foreclosure action.

On June 1, 2013, Loveless received an Act 91/Act 6[5] notice purportedly from the law offices of McCabe, Weisburg, and Conway, P.C.  The notice was transmitted, however, by BOA with a return address that belongs to BOA.  The notice states that BAC is the lender even though BAC was merged into BOA in July of 2011.  The notice demands payment for erroneous fess including property inspection fees of $281.00 and property preservation fees of $768.00.  The

---

[4] In fact, Loveless alleges that he was misled about who owned the "mortgage note."  As a mortgage and a note are separate documents, I assume that Loveless meant to refer to the mortgage and to the note.  Although the plaintiffs attached a copy of the mortgage to their amended complaint, they did not attach a copy of the note to their amended complaint.

[5] Act 91 refers to the Pennsylvania Homeowner's Emergency Assistance Act, 35 P.S. §§ 1680.401c, *et seq.* and Act 6 refers to Pennsylvania's Loan Interest and Protection Law, 41 P.S. §§ 101, *et seq.*  Both Acts provide, among other things, that prior to commencing a foreclosure action, a lender must provide the homeowner with notice of its intention to foreclose. *See* 41 P.S. § 403 and 35 P.S. § 1680.403c.

plaintiffs claim that the notice violated 15 U.S.C. § 1692e(3), § 1692e(2), and

1692f(6)(A).

Loveless filed the complaint in this case in this Court on June 11, 2013, and

he was represented by Attorney Moses.  He alleges that even though he was

represented by an attorney, BOA, or persons claiming to represent BOA, continued

to contact him by phone and mail, which Loveless claims violated 15 U.S.C.

§ 1692c(2).  Loveless advised the persons who contacted him that he had an

attorney and that he had filed a suit in federal court.  One representative verified

that it was documented in BOA's computer system that Loveless was represented

by an attorney.

On June 14, 2013, Loveless received a letter from BOA, which according to

Loveless gave a false and misleading impression that he should vacate his

property.  The letter, which is attached as an exhibit to the amended complaint,

provides in pertinent part:

> Thank you for your interest in the Mortgage Release™
> program. After careful review, we are unable to assist with your
> request for the following reason(s):
>
> • You did not vacate the property on the date you previously
> agreed to.

*Doc. 15-10* at 2.  Fine print at the end of the letter provides, in part:  "Bank of

America is working with a third party service provider, REDC Default Solutions.

Federal law requires that we communicate to you that Bank of America and REDC

Default Solutions are debt collectors." *Doc. 15-10* at 3.  Loveless alleges that he

never agreed to vacate his property and he never agreed to enter into the Mortgage

Release™ program with BOA.

Loveless received another letter from BOA, which he contends made a false

and misleading representation that he should voluntarily transfer ownership of his

property to Fannie Mae to satisfy the BOA debt.[6]  That letter, which is also

attached as an exhibit to the amended complaint, explains the Mortgage Release™

program, and it provides in part:

> A Mortgage Release™ is designed to help borrowers who are
> unable to afford their mortgage payment and want to avoid
> foreclosure.  With Mortgage Release™, you voluntarily transfer
> ownership of your house and all property secured by your
> mortgage loan to Fannie Mae to satisfy the total amount due on
> the first mortgage.

*Doc. 15-11* at 2.  Similar to the prior letter, fine print at the end of this letter

provides, in part:  "Bank of America is working with a third party service provider,

ServiceLink.  Federal law requires that we communicate to you that Bank of

America and ServiceLink are debt collectors." *Doc. 15-11* at 4.

According to the plaintiffs, BOA, through its contractors, caused physical

damage to their property and took personal property belonging to them.  The

plaintiffs allege that BOA implied to its contractors that it owned the property, and

---

[6] Although the plaintiffs allege that the date of this letter is August 16, 2013, the
actual letter that they submitted as an exhibit to their amended complaint is dated
October 4, 2013.

this resulted in the contractors illegally entering the property, removing more than

$20,000 worth of personal property belonging to the plaintiffs, and changing the

locks.  The plaintiffs claim that this violated 15 U.S.C. § 1692d and §1692e(10).[7]

The amended complaint contains two counts.  Count One is for breach of

contract based on Countrywide's failure to pay the property taxes in a timely

manner and based on the assignment of the mortgage.[8]  Count Two contains claims

under the Fair Debt Collection Practices Act.  The plaintiffs also mention

intentional infliction of emotional distress, negligent infliction of emotional

distress, and gross negligence in the conclusion section of the amended complaint.

The defendants filed a motion to dismiss the amended complaint.  After that

motion was fully briefed, Loveless filed a request for oral argument.  At a status

conference on April 17, 2014, I denied Loveless's request for oral argument.  I

now recommend that the motion to dismiss the amended complaint be granted in

part and denied in part.[9]

---

[7] The plaintiffs cite to 15 U.S.C. § 1692d and "§807(10)."  Section 807 of the
FDCPA is 15 U.S.C. § 1692e.
[8] The amended complaint is not clear about whether the plaintiffs are asserting a
breach-of-contract claim based on the assignment of the mortgage.
[9] Also pending is a motion for an order to cease and desist filed by Loveless on
July 23, 2014.  That motion is not yet ripe, and that motion will be addressed by a
separate Report and Recommendation in due course after it is ripe and after the
case has been remanded to the undersigned.

### III. Discussion.

### A.  Motion to Dismiss and Pleading Standards.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint

for "failure to state a claim upon which relief can be granted."  When reviewing a

motion to dismiss, "[w]e must accept all factual allegations in the complaint as

true, construe the complaint in the light favorable to the plaintiff, and ultimately

determine whether plaintiff may be entitled to relief under any reasonable reading

of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In

making that determination, we "consider only the complaint, exhibits attached to

the complaint, matters of public record, as well as undisputedly authentic

documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the

pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch.

Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012).  "Under Federal Rule of Civil

Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the

claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S.

662, 677-78 (2009).  The statement required by Rule 8(a)(2) must give the

defendant fair notice of what the plaintiff's claim is and of the grounds upon which

it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations

are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must
> plead to state a claim.' Second, the court should identify
> allegations that, 'because they are no more than conclusions,
> are not entitled to the assumption of truth.' Finally, 'where
> there are well-pleaded factual allegations, a court should
> assume their veracity and then determine whether they
> plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal,* 556

U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and

"'however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v.*

*Gamble,* 429 U.S. 97, 106 (1976)).  Nevertheless, "pro se litigants still must allege

sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina,*

*Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).  Thus, a well-pleaded complaint must

contain more than mere legal labels and conclusions.  Rather, a *pro se* complaint

must recite factual allegations that are sufficient to raise the plaintiff's claimed

right to relief beyond the level of mere speculation, set forth in a "short and plain"

statement of a cause of action.

**B.  Hennings Should Be Dismissed Unless She Signs the Amended
Complaint or Any Second Amended Complaint.**

Although Hennings is named as a plaintiff in the amended complaint, she

has not signed the amended complaint.  Nor has she signed any of the documents

filed by Loveless after the amended complaint was filed.  At the status conference

on April 17, 2014, I asked Hennings if she wanted to prosecute this action, and she

answered "yes" and she stated that she wished to join in Loveless's brief in

opposition to the motion to dismiss.  Defense counsel had no objection to that, and

I considered Hennings to have made an oral motion to join in the brief, and I

granted that motion.  Hennings, however, has not signed the amended complaint.

Pursuant to Fed.R.Civ.P. 11(a), "[e]very pleading, written motion, and other

paper must be signed by a least one attorney of record in the attorney's name—or

by a party personally if the party is unrepresented."  Rule 11(a) further provides

that "[t]he court must strike an unsigned paper unless the omission is promptly

corrected after being called to the attorney's or party's attention."

I recommend that Hennings be dismissed from this action unless she signs

the amended complaint within 14 days of the date of this Report and

Recommendation or unless the plaintiffs file a second amended complaint signed

by Hennings.  When deciding whether to sign the amended complaint or a second

amended complaint, Hennings should consider all the provisions of Rule 11 of the

Federal Rules of Civil Procedure, which address, among other things, what

representations a party makes by signing a document submitted to the Court and

the sanctions for violation of the Rule.

**C.  The Amended Complaint Fails to State a Claim Upon Which Relief Can Be Granted Against MERS Corp., MERS Inc., and Fannie Mae.**

MERS Corp., MERS Inc., and Fannie Mae contend that the amended complaint fails to state a claim against them upon which relief can be granted. Count One of the amended complaint contains breach-of-contract claims, but these defendants argue that, although the plaintiffs mention them in relation to the assignment of the mortgage, the plaintiffs fail to allege what contract they breached or how they breached it.  Rather, they assert that the breach-of-contract claim concerns Countywide's alleged failure to pay the property taxes on time, and the plaintiffs appear to claim that BOA, which acquired Countrywide, is responsible for that breach.  Further, MERS Corp., MERS Inc., and Fannie Mae assert that the plaintiffs fail to allege in connection with Count Two of the amended complaint any violation of the FDCPA on their part.  In their brief in opposition, the plaintiffs do not respond to the argument that they have failed to state a claim upon which relief can be granted against MERS Corp., MERS Inc., and Fannie Mae.

Because the amended complaint does not contain allegations from which it can reasonably be inferred that MERS Corp., MERS Inc., or Fannie Mae either breached a contract or violated the FDCPA, I agree with these defendants that the amended complaint fails to state a claim upon which relief can be granted against them.

**D. Breach of Contract.**

BOA and BAC contend that the plaintiffs' breach-of-contract claims are barred by the statute of limitations.  Although the statute of limitations is an affirmative defense, the Court can dismiss a complaint based on the statute of limitations when "the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 1 (3d Cir.1994).

The defendants cite 42 Pa.C.S.A. § 5525, which generally provides for a four-year statute of limitations for contract claims.  They reason that because the plaintiffs claim that Countrywide failed to pay a tax bill that was due on or after August 1, 2007,  the breach-of-contract claim in this case, which was not filed until June of 2013—more than four years after the claim accrued, is barred by the statute of limitations.  The plaintiffs respond that the mortgage was signed under seal, so, they contend, 42 Pa.C.S.A. § 5529(b), which provides for a 20-year statute of limitations for actions upon a written instrument under seal, applies.  The mortgage contains the word "seal" in parentheses after the signature lines on which the plaintiffs signed their names.  BOA and BAC do not reply to the plaintiffs' argument in this regard.  Because it is not clear from the face of the amended complaint that the breach-of-contract claims are barred by the statute of

limitations, I will not recommend that those claims be dismissed on the basis of the statute of limitations.

In addition to arguing that the breach-of-contract claims are barred by the statute of limitations, BOA and BAC contend that the amended complaint fails to state a breach-of-contract claim upon which relief can be granted. "Under Pennsylvania law, '[a] breach of contract action involves: (1) the existence of a contract; (2) a breach of a duty imposed by the contract; and (3) damages.'" *Burton v. Teleflex Inc.*, 707 F.3d 417, 431 (3d Cir. 2013)(quoting *Braun v. Wal–Mart Stores, Inc.,* 24 A.3d 875, 896 (Pa.Super.Ct. 2011)). The defendants contend that the plaintiffs failed to allege damages, a necessary element of a breach-of-contract claim. In this regard, they argue that the plaintiffs do not allege that they paid the taxes or that the taxes are currently owed. The plaintiffs, however, allege that after Countrywide failed to pay the taxes, the account was transferred to the Monroe County Tax Claim Bureau, which charged additional fees and interest raising the total of the tax bill from $1,468.22 to $1,666.01. The plaintiffs also allege that they became liable for those additional charges. Given these factual allegations, which I must accept as true for purposes of a motion to dismiss, the plaintiffs have sufficiently alleged damages.

The defendants also contend that one of the exhibits that the plaintiffs attached to their amended complaint refutes their allegation that they were liable

16

for additional charges.  The defendants contend that the exhibit, which is an account history from the Monroe County Treasurer's Office, shows that no tax money is owed.  The exhibit contains an entry for the tax bill in question with a balance due in the amount of $1,468.22. *Doc. 15-2* at 2.  The exhibit also has an entry dated January 20, 2008, with a notation "transferred to Tax C" and the amount "$1,468.22-" and then a ".00" in the balance column. *Id.* at 3.  Contrary to the defendants' suggestion, the exhibit does not necessarily contradict the plaintiffs' allegation that they were liable for additional charges.  In fact, the exhibit seems to support the plaintiffs' allegation that the tax bill was transferred to the Monroe County Tax Claim Bureau.  And the fact that there is a ".00" in the balance column of a report from the County Treasurer's Office after an account was transferred to the Tax Claim Bureau says nothing about whether the plaintiffs later paid the taxes or were liable for additional charges.

The defendants also contend that the plaintiffs' allegations about the assignment of the mortgage do not give rise to a breach-of-contract claim.  In this regard, I agree with the defendants.  The plaintiffs do not allege facts from which it can reasonably be inferred that the assignment breached the mortgage.  Accordingly, while the complaint states a breach-of-contract claim based on the failure to pay the taxes in a timely manner, it fails to state a breach-of-contract claim based on the assignment of the mortgage.

### E.  Fair Debt Collection Practices Act.

"The FDCPA is a consumer protection statute that prohibits certain abusive, deceptive, and unfair debt collection practices." *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1171 n.1 (2013).  It "authorizes any aggrieved person to recover damages from 'any debt collector who fails to comply with any provision' of the FDCPA." *Id.* (quoting 15 U.S.C. § 1692k(a)).  BOA and BAC contend that the amended complaint fails to state a claim under the FDCPA for two reasons.  First, they contend that they are not debt collectors and, therefore, the FDCPA does not apply to them.  Second, they contend that the amended complaint contains only conclusory allegations that fail to state a FDCPA claim upon which relief can be granted.

### 1. The Plaintiffs Sufficiently Allege that BOA and BAC Are Debt Collectors.

Under the FDCPA a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6).  The definition of "debt collector" excludes, among others, "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . .

concerns a debt which was originated by such person [or] concerns a debt which was not in default at the time it was obtained by such person . . . ." 15 U.S.C. § 1692a(6)(F).  Despite those exclusions, a "debt collector" includes "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6).

While the FDCPA generally applies only to "debt collectors," "[c]reditors— as opposed to 'debt collectors'—generally are not subject to the FDCPA." *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000).  Under the FDCPA, a "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). Where a party did not originate the debt, but it acquired the debt from another, the party could be either a creditor or a debt collector.  *F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007).  "However, as to a specific debt, one cannot be both a "creditor" and a "debt collector," as defined in the FDCPA, because those terms are mutually exclusive." *Id.* at 173.  "Courts have indicated that an assignee of an obligation is not a 'debt collector' if the obligation is not in default at the time of the assignment; conversely, an assignee may be deemed a 'debt collector'

19

if the obligation is already in default when it is assigned." *Pollice,* 225 F.3d at 403.

Thus, in determining if a defendant is a "creditor" or a "debt collector," the focus is

on the status of the debt at the time it was acquired. *Check Investors,* 502 F.3d at

173. "Admittedly, focusing on the status of the debt when it was acquired

overlooks the fact that the person engaging in the collection activity may actually

be owed the debt and is, therefore, at least nominally a creditor." *Id.*

"Nevertheless, pursuant to § 1692a, Congress has unambiguously directed our

focus to the time the debt was acquired in determining whether one is acting as a

creditor or debt collector under the FDCPA." *Id.; see also Haber v. Bank of Am.,*

*N.A.*, CIV.A. 14-0169, 2014 WL 2921659, *7 (E.D. Pa. June 27, 2014)("[A]

mortgage servicer, whether servicing debt belonging to itself or a different creditor,

is not a "debt collector" under the FDCPA unless the mortgage was already in

default at the time the mortgage servicing company began servicing the loan.").

The defendants contend that courts have routinely held that mortgage

serving companies are not debt collectors when the debt was not in default at the

time that it was assigned, and they assert that the plaintiffs have not alleged that the

debt was in default at the time they began servicing the plaintiffs' mortgage. The

FDCPA does not define the term "default," but at least one way to determine

whether an account was in default is by "looking at the 'state of mind' of the

creditor to see whether the creditor considered the debt to be in default." *Roberts v.*

20

*NRA Grp., LLC*, CIV.A. 3:11-2029, 2012 WL 3288076, at *6 (M.D. Pa. Aug. 10, 2012).  Here, the plaintiffs do not specifically allege that the mortgage was in default at the time of the assignment from MERS, Inc. to Countrywide Home Loans Serving LP, the name under which the plaintiffs allege BAC did business prior to April of 2009.  But the plaintiffs do allege that the assignment was on April 28, 2009, and less than a month later BAC filed a foreclosure action in state court.  And in that foreclosure action, BAC alleged that the mortgage was in default because monthly payments under the mortgage were due and unpaid for December 1, 2008 and each month thereafter.   In light of these allegations, which at this early stage of the proceedings I must take as true and construe in the light most favorable to the plaintiffs, I conclude that the plaintiffs have alleged sufficient facts from which it can reasonably be inferred that the mortgage was in default at the time of the assignment, and, as such, the defendants fall with the definition of debt collectors. [10]  This conclusion is reinforced by the plaintiffs' allegations that, in connection with certain correspondence, BOA identified itself as a debt collector.

---

[10] Given this conclusion I need not address the plaintiffs' argument that the defendants are debt collectors because they fall within the provision of the definition of debt collector in the FDCPA that includes "any creditor who, in the process of collecting his own debts, uses any name other than is own which would indicated that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6).

### 2. The Amended Complaint States Some FDCPA Claims Upon Which Relief Can Be Granted.

The defendants contend that the amended complaint fails to state a FDCPA claim upon which relief can be granted because the plaintiffs make only conclusory allegations.  Although the parties briefing on this issue is itself conclusory, I attempt to parse the plaintiffs' FDCPA claims and determine whether they state claims upon which relief can be granted.

First, the plaintiffs claim that the June 2013 Act 91/Act 6 notice violated 15 U.S.C. § 1692e(2), 15 U.S.C. § 1692e(3), and 15 U.S.C. § 1692f(6)(A).[11]  Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." It then provides a non-exhaustive list of ways that a debt collector violates that provision including by making a false representation about "the character, amount, or legal status of any debt" and by making a false representation about "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2) and § 1692e(3).  The plaintiffs allege that the notice purported to be from a law firm but was sent by BOA.  They also allege that the notice states that the lender is BAC even though

---

[11] The plaintiffs' amended complaint is not a model of clarity.  I construe the amended complaint to contain these claims regarding the Act 91/Act 6 notice because the plaintiffs refer to these sections of the FCDPA in the paragraph immediately following the paragraphs containing the factual allegations regarding the Act 91/Act 6 notice.

BAC merged into BOA in July of 2011.  They further allege that the notice makes a demand for payment for erroneous property inspection fees and property preservation fees.  These allegations put the defendants on notice of the basis for the plaintiffs' claims.  At this early stage of the proceedings, where I must accept the factual allegations of the complaint as true and I must construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiffs, I conclude that the plaintiffs have alleged enough to survive a motion to dismiss as to their claims that the Act 91/Act 6 notice violated 15 U.S.C. § 1692e(2) and § 1692e(3).

The plaintiffs also claim that the Act 91/Act 6 notice violated 15 U.S.C. § 1692f(6)(A).  Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," and it provides a non-exhaustive list of ways that a debt collector can violate that provision including by "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A).  Here, the amended complaint does not contain allegations about how the Act 91/Act 6 notice violated this section.  Thus, the amended complaint fails to state a claim upon which relief can be granted with respect to the Act 91/Act 6 notice and § 1692f(6)(A).

Next, the plaintiffs claim that BOA, or persons representing BOA, continued to contact Loveless by phone and by mail even after he filed this action and informed BOA that he had an attorney.  And they allege that BOA sent letters in June and in August or October of 2013[12] regarding the mortgage.  The plaintiffs contend that BOA violated 15 U.S.C. § 1692c(a)(2),[13] which provides that without prior permission of the consumer or a court, "a debt collector may not communicate with a consumer in connection with the collection of any debt—(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication with the consumer."  Given the allegation that BOA, or persons representing BOA, continued to contact Loveless even after he informed them that he had an attorney, I conclude that the amended complaint states a claim upon which relief can be granted in this regard.

The plaintiffs allege that a letter that Loveless received on June 14, 2013, implied that he had agreed to enter into a mortgage release program and gave the false and misleading impression that he should vacate his property when he never agreed to a mortgage release program or to vacate the property.  Except as noted

---

[12] See Footnote 6.
[13] Actually, the plaintiffs claim that this violated § 1692c(2), but because there is not such section, I assume that the plaintiffs meant § 1692c(a)(2).

above with respect to this letter being sent when the plaintiffs had counsel, the

plaintiffs do no cite a specific provision of the FDCPA that they contend this letter

violated.  But given that they allege that the letter gave a false and misleading

impression, I liberally construe the amended complaint to claim that the letter

violated 15 U.S.C. § 1692e.  The defendants do not specifically mention this letter

in their argument regarding the FDCPA claims, and so I recommend that the claim

under § 1692e with regard to this letter not be dismissed.

The plaintiffs also allege that in August or October of 2013,[14] BOA made a

false and misleading representation that Loveless should voluntarily transfer

ownership of his property to Fannie Mae to satisfy the BOA debt.  Again except as

noted above with respect to this letter being sent when the plaintiffs had counsel,

the plaintiffs do not cite a specific provision of the FDCPA that they contend this

letter violated.  But again given that they allege that the letter contained a false and

misleading representation, I liberally construe the amended complaint to claim that

the letter violated 15 U.S.C. § 1692e.  The letter, however, merely explains how

the Mortgage Release™ program works, and in connection with that explanation it

states that with a Mortgage Release™, ownership of the house is transferred to

Fannie Mae.  The letter cannot reasonably be construed to contain a false and

misleading representation that Loveless should voluntarily transfer ownership of

---

[14] See Footnote 6.

his property to Fannie Mae.  Accordingly, the amended complaint fails to state a § 1692e claim upon which relief can be granted with respect to this letter.

Finally, the plaintiffs allege that BOA, through its contractors, caused physical damage to the property and took more than $20,000 in personal property. According to the plaintiffs, BOA implied to its contractors that it owned the property, and this resulted in the contractors illegally entering the property, changing the locks, and removing personal property.  The plaintiffs claim that this violated § 1692d and § 1692e(10).  In one line in a footnote of their brief, the defendants state that the "[p]laintiffs fail to show how their conclusory allegations in Paragraphs 66-67 constitute a FDCPA violation."  *Doc. 20* at 13, n.3.  I do not address the defendants' argument as it was raised only in a footnote and it was raised in the most conclusory manner possible. *See John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.,* 119 F.3d 1070, 1076 n.6 (3d Cir.1997) ("arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived."); *Schmalz v. Sovereign Bancorp, Inc.*, 868 F. Supp. 2d 438, 457 n.14 (E.D. Pa. 2012)("An argument made only in a footnote is not worthy of credence (other than to be rejected by footnote).").

**F. The Amended Complaint Fails to State Claims for Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, or Negligence.**

The plaintiffs mention intentional infliction of emotional distress, negligent infliction of emotional distress, and gross negligence in the conclusion section of their amended complaint.  But they have not alleged how the defendants allegedly committed these torts.  Accordingly, the amended complaint fails to state a claim upon which relief can be granted for intentional infliction of emotional distress, negligent infliction of emotional distress, or gross negligence.

**G.  Leave to Amend**

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).  The court "must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." *Id.*

I recommend that certain claims be dismissed.  I cannot say, however, that amendment would be inequitable or futile.  Thus, I will recommend that the plaintiffs be granted leave to file a second amended complaint.  Any second amended complaint shall be complete in all respects.  It shall contain all the plaintiffs' claims against all the defendants.  It shall be a new pleading which stands by itself as an adequate complaint without reference to the complaints

27

already filed.  It shall not incorporate by reference any of the previous complaints.

Any second amended complaint shall be titled as a second amended complaint and

shall contain the docket number of this case.


## IV.  Recommendations.

Accordingly, for the foregoing reasons, it is recommended that the

defendants' motion (doc. 19) to dismiss the amended complaint be granted in part

and denied in part.  It is recommended that all claims in the amended complaint

against defendants MERS Corp., MERS Inc., and Fannie Mae be dismissed, that

the breach-of-contract claim based on the assignment of the mortgage be

dismissed, that the FDCPA claim with respect to the Act 91/Act 6 notice and

§ 1692f(6)(A) be dismissed, and that the FDCPA claim with respect to the

August/October 2013 letter and § 1692e be dismissed.  It is further recommended

that the claims for intentional infliction of emotional distress, negligent infliction

of emotional distress, and gross negligence be dismissed.  It is recommended that

the motion to dismiss be denied in all other respects.  It is also recommended that

the plaintiffs be granted leave to file a second amended complaint.  It is further

recommended that Hennings be dismissed as a plaintiff unless either she signs the

amended complaint within 14 days or she signs any second amended complaint

filed by the plaintiffs.  Finally, it is recommended that the case be remanded to the

undersigned for further proceedings.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 7th day of August, 2014.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge