UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RUSSELL R. LOVELESS and : CIVIL NO: 3:13-CV-01546
MARY ELLEN HENNINGS, :
: (Judge Caputo)
Plaintiff :
: (Magistrate Judge Schwab)
v. :
:
BANK OF AMERICA, N.A., *et al.,* :
:
Defendants :
:

## REPORT AND RECOMMENDATION

### I. Introduction.

The plaintiffs, Russell R. Loveless and Mary Ellen Hennings, claim that the defendants breached the terms of a mortgage. They further claim that the defendants violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, and they also assert a quiet-title claim. The defendants filed a motion to dismiss the second amended complaint, and for the reasons set forth below, we recommend that that motion be granted in part and denied in part.

### II. Background and Procedural History.

The plaintiffs began this action by filing a complaint in June of 2013. At that time they were represented by counsel, Anthony J. Moses, Esquire. The defendants filed a motion to dismiss the complaint, and the plaintiffs sought an

extension of time to respond to that motion asserting that they could not reach Moses, that Moses closed his office, and that his phone number had been disconnected.  The Court granted the plaintiffs an extension of time to respond to the motion, and it ordered that they obtain new counsel or proceed *pro se*.  The plaintiffs subsequently filed an amended complaint *pro se*.

The defendants moved to dismiss the amended complaint, and the Court granted in part and denied in part that motion.  The Court also granted the plaintiffs leave to file a second amended complaint, which the plaintiffs filed on September 30, 2014.  The second amended complaint names five defendants: (1) Bank of America, N.A. (Bank of America); (2) BAC Home Loans Servicing, LP (BAC); (3) MERS Corp., Inc. (MERS Corp.); (4) Mortgage Electronic Registration Systems, Inc. (MERS Inc.); and (5) the Federal National Mortgage Association (Fannie Mae).

The plaintiffs allege the following facts about the defendants.  Bank of America is a subsidiary of Bank of America Corporation (BOA), which is a national bank.  BAC was a subsidiary of Bank of America until July of 2011, when BAC merged with Bank of America.  MERS Corp. is owned by many of the most significant stakeholders in the mortgage industry, including Bank of America and Fannie Mae, and it owns and operates an electronic registry system (MERS system) that purports to track the ownership and servicing rights of its members in

residential loans.  MERS Inc. is a wholly owned subsidiary of MERS Corp.

MERS Inc. serves as the nominal mortgagee in the public land records for loans

that are registered on the MERS system.  Since 2001, MERS Inc. has served as the

mortgagee of record for more than 1.5 million mortgages.  Fannie Mae is a

publically traded company that securitizes mortgages.

  The plaintiffs' claims stem from a mortgage, and they allege the following

facts with respect to that mortgage and their involvement with the defendants.  In

May of 2007, the plaintiffs entered into a mortgage with Countrywide FSB, a

federally chartered savings bank.  The mortgage, which the plaintiffs attach to their

second amended complaint as an exhibit, lists the plaintiffs as the

borrower/mortgagor, Countrywide Bank, FSB as the lender, and MERS Inc. as the

mortgagee. *Doc. 38* at 3.  The mortgage provides that MERS Inc. is acting solely

as a nominee for the Lender and the Lender's successors and assigns. *Id.*  The

mortgage provides for an escrow for property taxes, and it provides among other

things that the "Lender shall apply the Funds to pay the Escrow Items no later than

the time specified under RESPA." *Id.* at 11.

  In August of 2007, the Pocono Mountain School District issued a tax bill in

the amount of $1,468.22 for taxes on the property subject to the mortgage.

Countrywide FSB failed to pay those taxes from the escrow as it was required by

the mortgage.  The plaintiffs received a notice from the Coolbaugh Township tax

collector that the taxes were unpaid, and they notified Countrywide that the taxes were due and payable.  Still Countrywide failed to pay the taxes.  In January of 2008, the Coolbaugh Township tax collector transferred the tax bill to the Monroe County Tax Claim Bureau.  The Monroe County Tax Claim Bureau charged additional fees and interest bringing the new total due to $1,666.01, for which the plaintiffs became liable.  The plaintiffs claim that Countrywide FSB breached the mortgage by failing to pay the taxes when due.

In 2008, BOA, the parent of Bank of America, purchased Countrywide Financial Corporation.  Prior to April of 2009, BAC did business under the name "Countrywide Home Loan Services, LP."  According to the plaintiffs, Countywide FSB breached the mortgage by failing to pay the taxes before BOA acquired Countrywide.  The plaintiffs allege that they exercised their right to rescind the mortgage.[1]

On April 28, 2009, MERS, Inc., as nominee for Countrywide FSB, assigned and transferred the mortgage to Countrywide Home Loans Servicing LP.  That assignment was executed by David Perez and Serena Harmon, identified on the assignment as assistant vice presidents of MERS, Inc.  The plaintiffs allege, however, that Perez was not a duly appointed or authorized officer of MERS, Inc. and that he did not have proper signing authority for MERS Corp.

---

[1] The plaintiffs do not allege when they purportedly rescinded the mortgage.  Nor do they provide any other allegations about the purported rescission.

On May 18, 2009, BAC, formerly known as Countrywide Home Loan Servicing LP, filed a mortgage foreclosure action in the Court of Common Pleas of Monroe County, Pennsylvania against the plaintiffs.  The foreclosure complaint in that case, which the plaintiffs attach to their second amended complaint as an exhibit, alleged that the mortgage was in default because monthly payments of principal and interest were due and unpaid for December 1, 2008 and each month thereafter. *Doc. 38-3* at 4.  The verification attached to the foreclosure complaint was signed by David Perez, as assistant vice president of BAC.  In November of 2009, the Court of Common Pleas entered a default judgment against the plaintiffs in the amount of $134,204.54, and a few days later, BAC filed a praecipe for a writ of execution.  Execution proceedings were stayed, however, in January of 2011.

In January of 2011, the plaintiffs discovered, through Fannie Mae's website, that Fannie Mae claimed to own their mortgage.  Also, a customer service representative of Fannie Mae informed Loveless that Fannie Mae owned the mortgage since its origination.  The plaintiffs also allege that a representative of Fannie Mae stated that Fannie Mae owned the mortgage since May 1, 2007, which date is ten days before the origination of the mortgage.  According to the plaintiffs, Fannie Mae claimed to own the mortgage during the same time that BAC was seeking to foreclose on the property.  But Fannie Mae has not recorded any

instrument with the Monroe County Recorder of Deeds establishing its ownership of the mortgage.

In late January of 2011, the plaintiffs sent a request to BAC asking for the full name, address, and phone number of the current holder of their loan, but BAC did not respond. At a reconciliation meeting ordered by the state court, an attorney representing BOA stated that "Bank of America certainly does own your loan." *Doc. 37* at ¶43. Bank of America, MERS Corp., MERS, Inc., and Fannie Mae, however, failed to produce any evidence of ownership of the mortgage and note.

In July of 2011, the Court of Common Pleas of Monroe County ordered the default judgment and writ of execution in the foreclosure action stricken, and it cancelled a scheduled sheriff's sale. A short time later, BAC filed a praecipe to discontinue the foreclosure action.

Loveless contends that he was misled as to which entity owned his mortgage and note.[2] According to the plaintiffs, although Bank of America no longer owns the mortgage and the note, it is still attempting to initiate a foreclosure action.

Paragraph 16 of the Mortgage, titled "Governing Law; Severability; Rules of Construction," provides in part:

---

[2] In fact, Loveless alleges that he was misled about who owned the "mortgage note." As a mortgage and a note are separate documents, we assume that Loveless meant to refer to the mortgage and to the note. Although the plaintiffs attach a copy of the mortgage to their second amended complaint, they did not attach a copy of the note.

> This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.

*Doc. 38* at 18. According to the plaintiffs, Fannie Mae concealed its alleged ownership of the mortgage and note, but it nevertheless had an "implied duty" to comply with Paragraph 16 of the mortgage and as such it was required to record all mortgages and assignments of mortgages and notes in accordance with Pennsylvania's recording statute, 21 P.S. § 351. According to the plaintiffs, Bank of America, BAC, and MERS, Inc. also were required by Pennsylvania's recording statute to record all mortgages and assignments of mortgages and notes. The plaintiffs claim that the defendants actions and inactions constitute "breach of contract by putting a cloud on the chain of title" of their property. *Doc. 37* at ¶52.

On June 1, 2013, Loveless received an Act 91/Act 6[3] notice purportedly from the law offices of McCabe, Weisburg, and Conway, P.C. The notice was transmitted, however, by Bank of America with a return address that belongs to Bank of America. The notice states that BAC is the lender even though BAC was

---

[3] Act 91 refers to the Pennsylvania Homeowner's Emergency Assistance Act, 35 P.S. §§ 1680.401c, *et seq.* and Act 6 refers to Pennsylvania's Loan Interest and Protection Law, 41 P.S. §§ 101, *et seq.* Both Acts provide, among other things, that prior to commencing a foreclosure action, a lender must provide the homeowner with notice of its intention to foreclose. *See* 41 P.S. § 403 and 35 P.S. § 1680.403c.

merged into Bank of America in July of 2011.  The notice demands payment for

erroneous fess including property inspection fees of $281.00 and property

preservation fees of $768.00.

Loveless filed the complaint in this case in this Court on June 11, 2013, and

he was represented by Attorney Moses.  He alleges that Bank of America, or

persons claiming to represent Bank of America, nevertheless continued to contact

him by phone and mail.  Loveless advised the persons who contacted him that he

had an attorney and that he had filed this case in federal court.  One representative

verified that it was documented in Bank of America's computer system that

Loveless was represented by an attorney.

On June 14, 2013, Loveless received a letter from Bank of America, which

stated that he did not vacate his property on the date agreed to and which,

according to Loveless, gave a false and misleading impression that he should

vacate his property.  The letter, which is attached as an exhibit to the second

amended complaint, provides in pertinent part:

> Thank you for your interest in the Mortgage Release™
> program. After careful review, we are unable to assist with your
> request for the following reason(s):
>
> • You did not vacate the property on the date you previously
> agreed to.

*Doc. 38-9* at 2.  Fine print at the end of the letter provides, in part:  "Bank of

America is working with a third party service provider, REDC Default Solutions.

Federal law requires that we communicate to you that Bank of America and REDC Default Solutions are debt collectors." *Id.* at 3.  Loveless alleges that he never agreed to vacate his property and he never agreed to enter into a mortgage release program.

Loveless received another letter from BOA, which he contends made a false and misleading representation that he should voluntarily transfer ownership of his property to Fannie Mae to satisfy the BOA debt.[4]  That letter, which is also attached as an exhibit to the second amended complaint, explains the Mortgage Release™ program, and it provides in part:

> A Mortgage Release™ is designed to help borrowers who are unable to afford their mortgage payment and want to avoid foreclosure.  With Mortgage Release™, you voluntarily transfer ownership of your house and all property secured by your mortgage loan to Fannie Mae to satisfy the total amount due on the first mortgage.

*Doc. 38-10* at 2.  Similar to the prior letter, fine print at the end of this letter provides, in part:  "Bank of America is working with a third party service provider, ServiceLink.  Federal law requires that we communicate to you that Bank of America and ServiceLink are debt collectors." *Id.* at 4.

According to the plaintiffs, BOA, through its contractors, caused physical damage to their property and took personal property belonging to them.  The

---

[4] Although the plaintiffs allege that the date of this letter is August 16, 2013, the actual letter that they submitted as an exhibit to their second amended complaint is dated October 4, 2013.

plaintiffs allege that BOA implied to its contractors that it owned the property, and this resulted in the contractors illegally entering the property, removing more than $20,000 worth of personal property belonging to the plaintiffs, and changing the locks.

According to the plaintiffs, Fannie Mae's assertions that it owns the mortgage coupled with its failure to record any mortgage instrument affects and corrupts the chain of title to their property. Similarly, according to the plaintiffs, MERS Corp. and MERS, Inc.'s failure to record note assignments among its members violates Pennsylvania's recording statute and corrupts the chain of title. Further, the plaintiffs allege that Bank of America and BAC claim that they own the mortgage and note, but they have failed to provide evidence of such. The plaintiffs claim that the actions of the defendants have corrupted the title to their property and have made their property unmarketable.

The second amended complaint contains three counts. Count One is for breach of contract based on Countrywide's failure to pay the property taxes in a timely manner, based on the defendants' failure to comply with Pennsylvania's recording statue, and possibly based on the assignment of the mortgage.[5] Count Two contains claims under the Fair Debt Collection Practices Act. And Count Three is a claim to quiet title.

---

[5] The amended complaint is not clear about whether the plaintiffs are asserting a breach-of-contract claim based on the assignment of the mortgage.

The defendants filed a motion to dismiss the second amended complaint, and that motion has been fully briefed.   For the reasons set forth below, we recommend that the motion to dismiss the second amended complaint be granted in part and denied in part.

## III. Discussion.

### A.  Motion to Dismiss and Pleading Standards.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012).  "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the

claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009).  The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994).  A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).  Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).  Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).  Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed

right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B.  Breach of Contract.

The second amended complaint contains several breach-of-contract claims. "Under Pennsylvania law, '[a] breach of contract action involves: (1) the existence of a contract; (2) a breach of a duty imposed by the contract; and (3) damages.'" *Burton v. Teleflex Inc.*, 707 F.3d 417, 431 (3d Cir. 2013)(quoting *Braun v. Wal–Mart Stores, Inc.,* 24 A.3d 875, 896 (Pa.Super.Ct. 2011)).

The plaintiffs contend that the defendants breached the mortgage by not recording all mortgage and note assignments in accordance with Pennsylvania's recording statute.  Assuming for the sake of argument that Pennsylvania's recording statute requires that such assignments be recorded, we nevertheless conclude that the second amended complaint fails to state a breach-of-contract claim in this regard.  Although the plaintiffs base their breach-of-contract claim in this regard on Paragraph 16 of the Mortgage, that provision, titled "Governing Law; Severability; Rules of Construction," does not contain a provision requiring recording and its provisions regarding the applicable law are too general to be read as requiring the recording of all mortgage assignments.  Accordingly, we conclude that the second amended complaint fails to state a breach-of-contract claim upon which relief can be granted in this regard.

14

It is not clear if the second amended complaint presents a breach-of-contract claim based on the April 2009 assignment of the mortgage from MERS, Inc., as nominee for Countrywide FSB, to Countrywide Home Loan Servicing LP, on the basis that David Perez, one of two individuals identified on the assignment as assistant vice presidents of MERS, Inc., was not a duly appointed officer of MERS, Inc. and did not have signing authority for MERS Corp.  But, in any event, the plaintiffs do not allege facts from which it can reasonably be inferred that the assignment breached the mortgage.  They have not pointed to any provision of the mortgage that the assignment violated.[6]  Accordingly, we conclude that the second amended complaint fails to state a breach of contract claim upon which relief can be granted based on the April 2009 assignment.

The defendants do not move to dismiss the breach-of-contract claim based on the failure to pay property taxes in a timely manner.  Accordingly, that claim should proceed as to Bank of America and BAC.  But because the second amended complaint does not contain allegations from which it can reasonably be inferred that MERS Corp., MERS, Inc., or Fannie Mae breached the mortgage, we recommend that all breach-of-contract claims against these defendants be dismissed.

---

[6]  The plaintiffs attached the assignment as an exhibit to the second amended complaint.  See Doc. 38-2 at 2-5.  From the exhibit, it is clear that the assignment was recorded.

15

### C.  Fair Debt Collection Practices Act.

The second amended complaint contains a number of FDCPA claims against Bank of America and BAC.[7]  "The FDCPA is a consumer protection statute that prohibits certain abusive, deceptive, and unfair debt collection practices." *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1171 n.1 (2013).  It "authorizes any aggrieved person to recover damages from 'any debt collector who fails to comply with any provision' of the FDCPA." *Id.* (quoting 15 U.S.C. § 1692k(a)).

Bank of America and BAC contend that the second amended complaint fails to state a FDCPA claim upon which relief can be granted as to the June 14, 2013 letter.  We addressed the June 14, 2013 letter and the FDCPA as follows in connection with the motion to dismiss the amended complaint:

> Except as noted above with respect to this letter being sent when the plaintiffs had counsel, the plaintiffs do no cite a specific provision of the FDCPA that they contend this letter violated.  But given that they allege that the letter gave a false and misleading impression, I liberally construe the amended complaint to claim that the letter violated 15 U.S.C. § 1692e. The defendants do not specifically mention this letter in their argument regarding the FDCPA claims, and so I recommend that the claim under § 1692e with regard to this letter not be dismissed.

*Doc. 32* at 24-25.

---

[7] The second amended complaint contains no allegations regarding any involvement by MERS Corp., MERS, Inc., or Fannie Mae in a purported FDCPA violation.   Thus, we do not construe the second amended complaint as asserting any FDCPA claims against MERS Corp., MERS, Inc., or Fannie Mae.

16

Although the plaintiffs failed to specify in their second amended complaint what provision of the FDCPA this letter is alleged to have violated, as in connection with the motion to dismiss the amended complaint, we liberally construe the second amended complaint to claim that the letter violated 15 U.S.C. § 1692e.  And in their reply brief, the plaintiffs cites § 1692(e), specifically § 1692e(10),  in connection with this letter.

Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C.A. § 1692e.  It then provides a non-exhaustive list of ways that a debt collector violates that provision including by making a "false representation or [using] deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C.A. § 1692e(10).

Bank of America and BAC contend that that no provision of 1692(e) makes a misrepresentation as to an agreement to vacate property a violation of the FDCPA.  Although §1692e does not specifically mention agreements to vacate property, if a misrepresentation is made in connection with an attempt to collect a debt, either the general prohibition of §1692(e) or the more specific § 1692e(10) may apply.  And here, the defendants do not argue that the letter did not contain a misrepresentation or that it was not made in connection with an attempt to collect a debt.  Accordingly, we reject Bank of America and BAC's argument that the

FDCPA claim based on the June 14, 2013 letter should be dismissed on the basis that § 1692e does not make a misrepresentation as to an agreement to vacate a violation of the FDCPA.

Bank of America and BAC also contend that because the communications set forth in the second amended complaint were with plaintiff Loveless, not Hennings, all the FDCPA claims by plaintiff Hennings (with the exception of the FDCPA claim based on contractors entering the property, changing the locks, and removing personal property) should be dismissed.  The plaintiffs do not address this argument in their reply.  Since all the communications set forth in the second amended complaint were with Loveless, not Hennings, we recommend that all FDCPA claims by Hennings based on the communications be dismissed.  Thus, the only FDCPA claim by Hennings that should go forward is the claim based on contractors entering the property, changing the locks, and removing personal property.[8]

### D.  Quiet Title Claim.

The plaintiffs present a claim to quiet title.  They allege that Fannie Mae's assertions that it owns the mortgage coupled with its failure to record any mortgage instrument affects and corrupts the chain of title to their property.  Similarly,

---

[8]  The defendants only address the FDCPA claims brought by Hennings and the FDCPA claim based on the June 14, 2013 letter.  Thus, those are the only FDCPA claims that we address.

18

according to the plaintiffs, MERS Corp. and MERS, Inc.'s failure to record note

assignments among its members violates Pennsylvania's recording statute and

corrupts the chain of title.  Further, the plaintiffs allege that Bank of America and

BAC claim that they own the mortgage and note, but they have failed to provide

evidence of such.  The plaintiffs claim that the actions of the defendants have

corrupted the title to their property and have made their property unmarketable.

The plaintiffs seek "declaratory relief to remove the encumbrances from the Public

record." *Doc. 37* at ¶85.

Pennsylvania Rule of Civil Procedure 1061(b) provides that a quiet-title

action may be brought:

> (1) to compel an adverse party to commence an action of
> ejectment; (2) where an action of ejectment will not lie, to
> determine any right, lien, title or interest in the land or
> determine the validity or discharge of any document, obligation
> or deed affecting any right, lien, title, or interest in land; (3) to
> compel an adverse party to file, record, cancel, surrender or
> satisfy of record, or admit the validity, invalidity or discharge
> of, any document, obligation or deed affecting any right, lien,
> title or interest in land; or (4) to obtain possession of land sold
> at a judicial or tax sale.

Pa. R. Civ. P. 1061(b).  "The purpose of an action to quiet title under Rule 1061 is

to remove clouds on title and resolve conflict over interests in property." *Lincoln v.*

*Magnum Land Servs., LLC*, No. 3:12-CV-576, 2013 WL 2443926, at *4 (M.D. Pa.

June 5, 2013).

Here, given that the plaintiffs allege that more than one of the defendants claimed to own the mortgage at that same time, the plaintiffs' quiet-title claim should be allowed to proceed.  The defendants contend, however, that the plaintiff's quiet-title claim fails because (1) the non-recording of the transfer of the note does not void the plaintiff's obligations under the mortgage; (2) Pennsylvania's recording statute does not provide for a private cause of action and the plaintiffs cannot use a quiet-title action to circumvent legislative intent; (3) there is no duty to record any documents under Pennsylvania's recording statute; and (4) even if there were a duty to record interests in real property, transfers of promissory notes are transfers of personal property that do not need to be recorded.

We agree with the defendants' first argument, i.e., that non-recording does not void the plaintiff's obligations under the mortgage. *See Fiore v. Fiore*, 405 Pa. 303, 306 (1961)("The recording of the deed was not essential to its validity or the transition of the title."); *Jobe v. Wells Fargo Bank, N.A.*, No. CIV.A. 3:10-1710, 2014 WL 271654, at *6 (M.D. Pa. Jan. 23, 2014) ("The mere fact that an assignment goes unrecorded, even for an extended period of time, does not negate a validly executed assignment.").  Thus, to the extent that the plaintiffs are seeking to have the mortgage and/or note declared invalid because transfers were not recorded, the second amended complaint fails to state a claim upon which relief can be granted.  But the quiet-title claim in this case can be construed more

20

narrowly as seeking to determine what mortgage or mortgages are in place against the property and who holds the mortgage or mortgages,[9] and so construed we believe that the claim should be allowed to proceed given that the plaintiffs have alleged that more than one of the defendants have claimed to own the mortgage at the same time.

Further, given the plaintiffs' allegations regarding conflicting claims by the defendants regarding the mortgage, allowing a quiet-title claim to proceed would not circumvent the legislature's intent, even assuming that there is no private right of action under Pennsylvania's recording statute.  Thus, we reject the defendants' second argument for dismissal of the quiet-title claim.

As to the defendants' third and fourth arguments for dismissal, i.e., that there is no duty to record any documents and in particular no duty to record promissory notes, those issues are currently pending before the United States Court of Appeals for the Third Circuit.  In *Montgomery Cnty., Pa. v. MERSCORP, Inc.*, the United States District Court for the Eastern District of Pennsylvania, in the context of a case brought by a County Recorder of Deeds, declared "that the assignment or transfer of a promissory note secured by a mortgage on real estate is, in

---

[9]  In their second amended complaint, the plaintiffs quote Pa.R.Civ.P. 1061(b)(3), which provides that a quiet-title action can be brought "to compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land." *See Doc. 37* at ¶73.

Pennsylvania, equivalent to a mortgage assignment" and that the "failure to create

and record documents evincing the transfers of promissory notes secured by

mortgages on real estate in the Commonwealth of Pennsylvania is, was and will in

the future be, in violation of the Pennsylvania Recording law-most particularly 21

P.S. §§ 351." 16 F. Supp. 3d 542, 565 (E.D. Pa. 2014).  The Eastern District

certified its interlocutory order and opinion for immediate appeal in accordance

with 28 U.S.C. § 1292(b), *See Montgomery Cnty. v. MERSCORP, Inc.*, No. 11-

CV-6968, 2014 WL 4452971, at *1 (E.D. Pa. Sept. 8, 2014), and the United States

Court of Appeals for the Third Circuit granted permission to appeal under 28

U.S.C. § 1292(b), *see Montgomery Cnty. v. MERSCORP, Inc.*, No. 14-4315, slip

order at *1 (3d Cir. Oct. 30, 2014).  The opinion of the Eastern District is

comprehensive and well reasoned, and unless or until it is reversed by the Third

Circuit, we recommend that this Court follow that opinion.  Thus, we recommend

that the quiet-title claim against defendants Bank of America, BAS, MERS, Inc.,

and Fannie Mae not be dismissed at this time.

We do, however, recommend that the quiet-title claim against MERS Corp.

be dismissed.  Although the plaintiffs make some general allegations regarding

MERS Corp., they allege that it was MERS, Inc. who was the mortgagee in this

case.  They haven't alleged sufficient facts to show that MERS Corp., which is the

parent of MERS, Inc., ever had or ever claimed an interest in the mortgage or note.

Accordingly, we conclude that the second amended complaint fails to state a quiet-title claim against MERS, Corp.

### E.  Leave to Amend

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).  The court "must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." *Id.*   In this case, the plaintiffs were granted leave to file a second amended complaint to cure deficiencies in their amended complaint. Although they filed a second amended complaint, as discussed above, they still failed to state a claim upon which relief can be granted as to certain claims. Granting the plaintiffs further leave to amend would be futile.


### IV.  Recommendations.

Based on the foregoing, it is recommended that the defendants' motion (doc. 39) to dismiss the second amended complaint be granted in part and denied in part. It is recommended that all claims against MERS Corp. be dismissed; that all breach-of-contract claims be dismissed except the breach-of-contract claim against Bank of America and BAC based on the failure to pay the taxes; that all FDCPA

claims by Hennings be dismissed except the claim based on contractors entering

the property, changing the locks, and removing personal property; and that the

quiet-title claim be dismissed to the extent that the plaintiffs are seeking to have

the mortgage and/or note declared invalid because transfers were not recorded.  It

is recommended that the motion to dismiss otherwise be denied.  Finally, it is

recommended that the case be remanded to the undersigned for further

proceedings.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within
fourteen (14) days after being served with a copy thereof.  Such party
shall file with the clerk of court, and serve on the magistrate judge and
all parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to
which objection is made and the basis for such objections.  The
briefing requirements set forth in Local Rule 72.2 shall apply.  A
judge shall make a de novo determination of those portions of the
report or specified proposed findings or recommendations to which
objection is made and may accept, reject, or modify, in whole or in
part, the findings or recommendations made by the magistrate judge.
The judge, however, need conduct a new hearing only in his or her
discretion or where required by law, and may consider the record
developed before the magistrate judge, making his or her own
determination on the basis of that record.  The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of June, 2015.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge