UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUSSELL R. LOVELESS and | : | CIVIL NO: 3:13-CV-01546 |
| MARY ELLEN HENNINGS, | : | |
| | : | (Judge Caputo) |
| Plaintiff | : | |
| | : | (Magistrate Judge Schwab) |
| v. | : | |
| | : | |
| BANK OF AMERICA, N.A., *et al.,* | : | |
| | : | |
| Defendants | : | |
| | : | |

## REPORT AND RECOMMENDATION

### I.  Introduction.

The plaintiffs, Russell R. Loveless and Mary Ellen Hennings, claim that the defendants breached the terms of a mortgage and that the defendants violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*  They also assert a quiet-title claim.  Loveless is seeking a preliminary injunction ordering defendant Bank of America and its contractors to stop trespassing on his property. Because Loveless has not shown irreparable injury, we recommend that the Court deny his request for a preliminary injunction.

### II.  Background and Procedural History.

The plaintiffs began this action by filing a complaint in June of 2013.  At that time they were represented by counsel, Anthony J. Moses, Esquire.  The

defendants filed a motion to dismiss the complaint, and the plaintiffs sought an extension of time to respond to that motion asserting that they could not reach Moses, that Moses closed his office, and that his phone number had been disconnected. The Court granted the plaintiffs an extension of time to respond to the motion, and it ordered that they obtain new counsel or proceed *pro se*. The plaintiffs subsequently filed an amended complaint *pro se.*

The defendants moved to dismiss the amended complaint, and the Court granted in part and denied in part that motion. The Court also granted the plaintiffs leave to file a second amended complaint, which the plaintiffs filed on September 30, 2014. The second amended complaint names five defendants: (1) Bank of America, N.A. (Bank of America); (2) BAC Home Loans Servicing, LP (BAC); (3) MERS Corp., Inc. (MERS Corp.); (4) Mortgage Electronic Registration Systems, Inc. (MERS Inc.); and (5) the Federal National Mortgage Association (Fannie Mae).

The plaintiffs allege the following facts about the defendants. Bank of America is a subsidiary of Bank of America Corporation (BOA), which is a national bank. BAC was a subsidiary of Bank of America until July of 2011, when BAC merged with Bank of America. MERS Corp. is owned by many of the most significant stakeholders in the mortgage industry, including Bank of America and Fannie Mae, and it owns and operates an electronic registry system (MERS

system) that purports to track the ownership and servicing rights of its members in residential loans. MERS Inc. is a wholly owned subsidiary of MERS Corp. MERS Inc. serves as the nominal mortgagee in the public land records for loans that are registered on the MERS system. Since 2001, MERS Inc. has served as the mortgagee of record for more than 1.5 million mortgages. Fannie Mae is a publically traded company that securitizes mortgages.

The plaintiffs' claims stem from a mortgage, and they allege the following facts with respect to that mortgage and their involvement with the defendants. In May of 2007, the plaintiffs entered into a mortgage with Countrywide FSB, a federally chartered savings bank. The mortgage, which the plaintiffs attach to their second amended complaint as an exhibit, lists the plaintiffs as the borrower/mortgagor, Countrywide Bank, FSB as the lender, and MERS Inc. as the mortgagee. *Doc. 38* at 3. The mortgage provides that MERS Inc. is acting solely as a nominee for the Lender and the Lender's successors and assigns. *Id.* The mortgage provides for an escrow for property taxes, and it provides among other things that the "Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA." *Id.* at 11.

In August of 2007, the Pocono Mountain School District issued a tax bill in the amount of $1,468.22 for taxes on the property subject to the mortgage. Countrywide FSB failed to pay those taxes from the escrow as it was required by

the mortgage.  The plaintiffs received a notice from the Coolbaugh Township tax collector that the taxes were unpaid, and they notified Countrywide that the taxes were due and payable.  Still Countrywide failed to pay the taxes.  In January of 2008, the Coolbaugh Township tax collector transferred the tax bill to the Monroe County Tax Claim Bureau.  The Monroe County Tax Claim Bureau charged additional fees and interest bringing the new total due to $1,666.01, for which the plaintiffs became liable.  The plaintiffs claim that Countrywide FSB breached the mortgage by failing to pay the taxes when due.

In 2008, BOA, the parent of Bank of America, purchased Countrywide Financial Corporation.  Prior to April of 2009, BAC did business under the name "Countrywide Home Loan Services, LP."  According to the plaintiffs, Countywide FSB breached the mortgage by failing to pay the taxes before BOA acquired Countrywide.  The plaintiffs allege that they exercised their right to rescind the mortgage.[1]

On April 28, 2009, MERS, Inc., as nominee for Countrywide FSB, assigned and transferred the mortgage to Countrywide Home Loans Servicing LP.  That assignment was executed by David Perez and Serena Harmon, identified on the assignment as assistant vice presidents of MERS, Inc.  The plaintiffs allege,

---

[1]  The plaintiffs do not allege when they purportedly rescinded the mortgage.  Nor do they provide any other allegations about the purported rescission.

4

however, that Perez was not a duly appointed or authorized officer of MERS, Inc. and that he did not have proper signing authority for MERS Corp.

On May 18, 2009, BAC, formerly known as Countrywide Home Loan Servicing LP, filed a mortgage foreclosure action in the Court of Common Pleas of Monroe County, Pennsylvania against the plaintiffs.  The foreclosure complaint in that case, which the plaintiffs attach to their second amended complaint as an exhibit, alleged that the mortgage was in default because monthly payments of principal and interest were due and unpaid for December 1, 2008 and each month thereafter. *Doc. 38-3* at 4.  The verification attached to the foreclosure complaint was signed by David Perez, as assistant vice president of BAC.  In November of 2009, the Court of Common Pleas entered a default judgment against the plaintiffs in the amount of $134,204.54, and a few days later, BAC filed a praecipe for a writ of execution.  Execution proceedings were stayed, however, in January of 2011.

In January of 2011, the plaintiffs discovered, through Fannie Mae's website, that Fannie Mae claimed to own their mortgage.  Also, a customer service representative of Fannie Mae informed Loveless that Fannie Mae owned the mortgage since its origination.  The plaintiffs also allege that a representative of Fannie Mae stated that Fannie Mae owned the mortgage since May 1, 2007, which date is ten days before the origination of the mortgage.  According to the plaintiffs, Fannie Mae claimed to own the mortgage during the same time that BAC was

seeking to foreclose on the property.  But Fannie Mae has not recorded any

instrument with the Monroe County Recorder of Deeds establishing its ownership

of the mortgage.

In late January of 2011, the plaintiffs sent a request to BAC asking for the

full name, address, and phone number of the current holder of their loan, but BAC

did not respond.  At a reconciliation meeting ordered by the state court, an attorney

representing BOA stated that "Bank of America certainly does own your loan."

*Doc. 37* at ¶43.  Bank of America, MERS Corp., MERS, Inc., and Fannie Mae,

however, failed to produce any evidence of ownership of the mortgage and note.

In July of 2011, the Court of Common Pleas of Monroe County ordered the

default judgment and writ of execution in the foreclosure action stricken, and it

cancelled a scheduled sheriff's sale.  A short time later, BAC filed a praecipe to

discontinue the foreclosure action.

Loveless contends that he was misled as to which entity owned his mortgage

and note.  According to the plaintiffs, although Bank of America no longer owns

the mortgage and the note, it is still attempting to initiate a foreclosure action.

Paragraph 16 of the Mortgage, titled "Governing Law; Severability; Rules of

Construction," provides in part:

> This Security Instrument shall be governed by federal
> law and the law of the jurisdiction in which the Property is
> located.  All rights and obligations contained in this Security

> Instrument are subject to any requirements and limitations of
> Applicable Law.

*Doc. 38* at 18.  According to the plaintiffs, Fannie Mae concealed its alleged

ownership of the mortgage and note, but it nevertheless had an "implied duty" to

comply with Paragraph 16 of the mortgage and as such it was required to record all

mortgages and assignments of mortgages and notes in accordance with

Pennsylvania's recording statute, 21 P.S. § 351.  According to the plaintiffs, Bank

of America, BAC, and MERS, Inc. also were required by Pennsylvania's recording

statute to record all mortgages and assignments of mortgages and notes.  The

plaintiffs claim that the defendants actions and inactions constitute "breach of

contract by putting a cloud on the chain of title" of their property. *Doc. 37* at ¶52.

        According to the plaintiffs, they received a number of communications from

Bank of America and BAC that violated the FDCPA.[2]  Also, according to the

plaintiffs, BOA, through its contractors, caused physical damage to their property

and took personal property belonging to them.  The plaintiffs allege that BOA

implied to its contractors that it owned the property, and this resulted in the

contractors illegally entering the property, removing more than $20,000 worth of

personal property belonging to the plaintiffs, and changing the locks.

---

[2] We do not set forth the alleged details regarding these communications as they
are not relevant to the pending motion to cease and desist.

7

According to the plaintiffs, Fannie Mae's assertions that it owns the mortgage coupled with its failure to record any mortgage instrument affects and corrupts the chain of title to their property.  Similarly, according to the plaintiffs, MERS Corp. and MERS, Inc.'s failure to record note assignments among its members violates Pennsylvania's recording statute and corrupts the chain of title.  Further, the plaintiffs allege that Bank of America and BAC claim that they own the mortgage and note, but they have failed to provide evidence of such.  The plaintiffs claim that the actions of the defendants have corrupted the title to their property and have made their property unmarketable.

The second amended complaint contains three counts.  Count One is for breach of contract based on Countrywide's failure to pay the property taxes in a timely manner, based on the defendants' failure to comply with Pennsylvania's recording statue, and possibly based on the assignment of the mortgage.  Count Two contains claims under the Fair Debt Collection Practices Act.  And Count Three is a claim to quiet title.

The defendants filed a motion to dismiss the second amended complaint, and that motion was granted in part and denied in part.  All claims against MERS Corp. were dismissed; all breach-of-contract claims were dismissed except the breach-of-contract claim against Bank of America and BAC based on the failure to pay the taxes; all FDCPA claims by Hennings were dismissed except the claim based on

contractors entering the property, changing the locks, and removing personal property; the quiet-title claim against MERS Inc. was dismissed in its entirety;  and the quiet-title claim against the other defendants was dismissed  to the extent that the plaintiffs are seeking to have the mortgage and/or note declared invalid because transfers were not recorded and to the extent that that claim was based on defendants' alleged violations of 21 P.S. § 351.

In 2014, Loveless filed a motion for an order to cease and desist claiming that contractors for Bank of America trespassed on his property for the purpose of repairing pipes on the property, and they changed the locks, performed landscaping, and removed some personal property without his consent.  Given that Bank of America responded that it instructed its contractors not to enter the property any more, we recommended that Loveless's motion be denied because he could not show irreparable injury.  Judge Caputo adopted that Report and Recommendation and denied Loveless's motion as moot without prejudice to Loveless refiling should the defendant or its contractors re-enter the property.

Currently pending is Loveless's renewed "Motion for Order to Cease and Desist."[3]  In this motion, Loveless asserts that in October of 2015, contractors working for Bank of American entered his property, removed the locks, and

---

[3] Although Loveless initially failed to sign this motion, *see doc. 60,* after the undersigned pointed that out during a telephone conference, Loveless then filed a signed copy of his motion, *see doc. 74*.  As Hennings has not signed the motion, we construe the motion as brought only by Loveless.

installed their own locks, all without his knowledge.  He contends that this barred

him from the use of the property, and requests that the Court order Bank of

America and its contractors to stop any further trespass on the property.  Loveless

filed a brief in support of this motion arguing that because Countrywide failed to

pay a tax bill in 2007 on time, it materially breached the mortgage contract, and

thus, he was excused from fulfilling his obligations under the contract.  And

therefore, according to Loveless, Bank of America, as successor of Countrywide,

has no right under the mortgage to enter the property.

Bank of America filed a brief in opposition arguing that it has only one

vendor assigned to the subject property, that vendor's records show that a "no-

entry" instruction has been in place since July of 2014, and it has been limited to

visual drive-by inspection since that time.  Bank of America contends that

Loveless does not have any evidence that it or its contractors entered the property.

Further, according to Bank of America, the 2007 school taxes on the property were

eventually paid and the alleged failure to pay the school taxes in a timely manner

in 2007 was not a material breach of the mortgage.  Bank of America contends,

therefore, that Loveless was not excused from performing his obligations under the

mortgage, that he is in default, and under the mortgage it has the contractual right

to enter the property and protect its rights.  Bank of America also asserts that any

injury to Loveless is compensable in money damages, and so Loveless cannot

show irreparable injury.  Bank of America further asserts that given that the

plaintiffs no longer reside at the property and the property is vacant, granting a

preliminary injunction would adversely affect its ability to protect its interest in the

property under the terms of the mortgage.  Finally, Bank of America contends that

the motion for a preliminary injunction is moot given that it notified its contractors

not to enter the property and that instruction remains in effect.

Counsel subsequently entered an appearance on behalf of Loveless and

Hennings.  After a status conference with counsel, we stayed Loveless's motion to

cease and desist to allow counsel, who had recently entered his appearance, time to

come up to speed and to consider whether Loveless still wanted to pursue the

motion to cease and desist.  In accordance with orders from the undersigned,

counsel filed letters on the docket regarding whether the motion to cease and desist

could be resolved without judicial intervention. *See docs.82 & 84*.  The parties

were unable to resolve the issue and given their letters, the motion to cease and

desist is ripe for decision.


## III. Discussion.

At the outset, we reject Bank of America's argument that the motion should

be denied as moot in light of its instructions to its contractors not to enter the

property.  Given Bank of America's assertion in 2014 that it had instructed its

contractors not to enter the property, Loveless's first motion to cease and desist was denied as moot. But it was denied without prejudice to refiling should the defendant or its contractors re-enter the property. Loveless now contends that someone reentered the property and changed the locks. While Bank of America contends that its contractor did not change the locks because it had previously instructed its contractor not to enter the property, it is difficult to image who else would change the locks. In any event, given that the someone has purportedly re-entered the property and again changed the locks, it would not be appropriate to dismiss Loveless's renewed motion as moot.

We nevertheless recommend that Loveless's motion for a preliminary injunction be denied. A motion for preliminary injunctive relief is governed by Rule 65 of the Federal Rules of Civil Procedure and is judged against exacting legal standards. To obtain a preliminary injunction, a party "must satisfy the traditional four-factor test: (1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Miller v. Mitchell,* 598 F.3d 139, 147 (3d Cir. 2010).

Preliminary injunctive relief is not granted as a matter of right. *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982); *see also Thomas v. Pennsylvania Dep't of Corr.*, 3:13-CV-2661, 2014 WL 3955105, at *1 (M.D. Pa. Aug. 13, 2014)

("An injunction is an 'extraordinary remedy' that is never awarded as of right.").
Rather, the decision to grant or deny such relief is committed to the discretion of
the district court. *United States v. Price*, 688 F.2d 204, 210 (3d Cir. 1982).
Preliminary injunctive relief is an extraordinary remedy that places precise burdens
on the moving party, and "[t]he preliminary injunction must be the only way of
protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight,
Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). "It has been well stated that upon an
application for a preliminary injunction to doubt is to deny." *Madison Square
Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3d Cir. 1937).

Loveless cannot show irreparable injury. Irreparable injury is "harm which
cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air
Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). "The
preliminary injunction must be the only way of protecting the plaintiff from harm."
*Id.* "Thus, in order to warrant a preliminary injunction, the injury created by a
failure to issue the requested injunction must 'be of a peculiar nature, so that
compensation in money cannot atone for it . . . .' " *Acierno v. New Castle Cty., 40
F.3d 645, 653 (3d Cir. 1994) (quoting *A.O. Smith Corp. v. F.T.C.*, 530 F.2d 515,
525 (3d Cir.1976)). "[P]urely economic harm that can be adequately compensated
with a monetary award following adjudication on the merits" does not qualify as
irreparable injury. *Checker Cab of Philadelphia Inc. v. Uber Techs., Inc.*, 643 F.

13

App'x 229, 232 (3d Cir. 2016); *See also Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 557 (3d Cir. 2009) ("We have long held that an injury measured in solely monetary terms cannot constitute irreparable harm."); *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) ("The availability of adequate monetary damages belies a claim of irreparable injury."); *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1145 (3d Cir. 1982) ("[W]e have never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law.").

Here, because Loveless does not live in the property and Bank of America has asserted that it will not take steps to prevent him from entering the property, *see doc. 84* at 2, Loveless will not be irreparably injured if a preliminary injunction is not issued barring Bank of America from entering the property and changing the locks again.  Loveless can pay to have the locks changed so that he has access to the property.  While this will cost some money, if, as Loveless asserts, Bank of America had no right to enter the property under the mortgage because of the purported failure to timely pay the taxes in 2007, then Loveless can recover that amount as damages should he prevail on the merits.  Because Loveless's asserted injury can be compensated by money, it does not amount to irreparable injury, and Loveless is not entitled to a preliminary injunction.

14

## IV.  Recommendation.

Based on the foregoing, it is recommended that Loveless's motions (docs. 60 & 74) for a preliminary injunction be denied.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 24th day of August, 2016.

_S/Susan E. Schwab_
Susan E. Schwab
United States Magistrate Judge